THE TOWN OF AYDEN, Plaintiff v. THE TOWN OF WINTERVILLE, Defendant

No. COA99-1595

(Filed 17 April 2001)

**Cities and Towns— annexation—lack of standing—no justiciable controversy**

The trial court did not err in a voluntary annexation case by granting defendant town's motion to dismiss based on plaintiff neighboring town's lack of standing, because: (1) N.C.G.S. § 160A-31 does not identify categories of plaintiffs other than owners of land in the subject area who are authorized to challenge an annexation under this statute; (2) plaintiff did not own property in this area and both towns were not simultaneously attempting to annex controverted property so that there would be a justiciable issue; and (3) there is no statutory authority that would give plaintiff the power to challenge the annexation ordinance if it were seeking to exercise extraterritorial jurisdiction over the area in controversy.

Appeal by plaintiff from judgment entered 30 September 2000 by Judge Richard B. Allsbrook in Pitt County Superior Court. Heard in the Court of Appeals 14 February 2001.

*The Brough Law Firm by Robert E. Hornik, Jr. and Michael B. Brough, and Lewis & Associates, by Christopher P. Edwards, for plaintiff-appellant.*

*Poyner & Spruill, L.L.P., by Robin Tatum Morris, and Law Offices of E. Keen Lassiter, by E. Keen Lassiter, for defendant-appellee.*

BIGGS, Judge.

This appeal arises out of the trial court's dismissal of plaintiff's action, on the basis that plaintiff lacked standing. We affirm the dismissal by the trial court.

**TOWN OF AYDEN v. TOWN OF WINTERVILLE**

[143 N.C. App. 136 (2001)]

In March of 1999, the Town of Ayden (plaintiff) filed suit against the Town of Winterville (defendant). Ayden's complaint challenged Winterville's 1997 voluntary annexation of an adjoining neighborhood, South Ridge Subdivision, and of land adjacent to South Ridge. Ayden alleged that Winterville had failed to comply with certain requirements of N.C.G.S. § 160A-31 (1999), the statute governing voluntary annexations. The suit also claimed that the purportedly defective annexation may restrict Ayden's future exercise of its statutory right under N.C.G.S. § 160A-360(a) (1999) to regulate zoning and development up to a mile beyond its city limits. Ayden sought a declaratory judgment invalidating Winterville's adoption of the annexation ordinance.

Defendant moved for dismissal pursuant to N.C.G.S. § 1A-1, Rule 12(b)(6) (1999), arguing that Ayden lacked standing to challenge Winterville's annexation. Subsequently, both parties moved for summary judgment. Following a hearing on these motions, the trial court granted defendant's motion for dismissal, based on plaintiff's lack of standing. Plaintiff appeals from this order. For the reasons that follow, we affirm the trial court's ruling on the issue of standing. We also hold that at the time this action was commenced, there was no justiciable controversy between the parties that would have given the trial court jurisdiction to render a declaratory judgment on the validity of Winterville's 1997 annexation of South Ridge Subdivision.

Ayden and Winterville are neighboring towns in Pitt County, North Carolina. In recent years, development on the margins of both towns, and along North Carolina State Road 11, has brought the developed areas outside the towns closer together. In early 1997, approximately two miles of unincorporated land separated the two. In August, 1997, Winterville annexed a neighborhood located between Ayden and Winterville, the South Ridge Subdivision, and adjoining land associated with South Ridge. After the annexation was complete, the corporate limits of Ayden and Winterville were approximately one mile apart.

The area was annexed pursuant to the voluntary annexation procedure authorized by G.S. § 160A-31, "Annexation by Petition," a form of annexation that is predicated on a request by petition of the real property owners in the area to be annexed, followed by the enactment of an ordinance extending the corporate limits of the municipality. G.S. § 160A-31 provides in pertinent part:

(a) The governing board of any municipality may annex by ordinance any area contiguous to its boundaries upon presentation to the governing board of a petition signed by the owners of all the real property located within such area. The petition shall be signed by each owner of real property in the area and shall contain the address of each such owner. . . . (d) . . . Upon a finding that the petition meets the requirements of this section, the governing board shall have authority to pass an ordinance annexing the territory described in the petition.

G.S. § 160A-31(a) and (d).

Under G.S. § 160A-360, a municipality may exercise zoning and regulatory powers beyond it's corporate limits. The statutory authorization specifies that:

[a]ll of the powers granted by this Article may be exercised by any city within its corporate limits. In addition, any city may exercise these powers within a defined area extending not more than one mile beyond its limits. . . . The boundaries of the city's extraterritorial jurisdiction shall be the same for all powers conferred in this Article.

G.S. 160A-360(a).

Thus, the enlargement of a municipality's corporate limits also expands the area over which it may regulate development and adopt zoning ordinances beyond its corporate limits. In the present case, Winterville's annexation of South Ridge Subdivision augmented its potential zone of extraterritorial jurisdiction so that it overlaps with Ayden's potential area of extraterritorial jurisdiction. Ayden argues that this potential area of overlap gives it standing to challenge the underlying annexation that allowed Winterville to expand. A review of the law persuades us that this potential for conflict neither confers standing on Ayden, nor does it constitute a justiciable controversy.

In passing on the validity of an annexation or zoning ordinance, one of the court's first concerns is whether the plaintiff has standing to bring the action. *Taylor v. City of Raleigh*, 290 N.C. 608, 227 S.E.2d 576, (1976). The plaintiffs in *Taylor* had challenged certain annexation and zoning ordinances which had resulted in the city's seeking a sewer easement through their properties. However, the plaintiffs did not own property within the annexed area. The North Carolina Supreme Court held that, without actual ownership of annexed property, the plaintiffs lacked standing to challenge the annexation ordi-

nance, notwithstanding any injury to them occasioned by the proposed sewer easement. *Taylor* relied in part on an earlier case, *Gaskill v. Costlow*, 270 N.C. 686, 155 S.E.2d 148 (1967), which had held that challenges by private individuals to annexations generally are limited to plaintiffs with specific statutory authority to bring suit (*e.g.*, owners of real property within an area to be annexed). The *Gaskill* Court stated that:

> [U]nless an annexation ordinance be absolutely void (*e.g.*, on the ground of lack of legislative authority for its enactment), in the absence of specific statutory authority to do so, private individuals may not attack, collaterally or directly, the validity of proceedings extending the corporate limits of a municipality. *Such an action is to be prosecuted only by the State through its proper officers.* (emphasis added).

*Taylor*, 290 N.C. at 617-18, 227 S.E.2d at 581-82.

Subsequent cases of this Court also have adhered to the principle that absent statutory authorization, a plaintiff will lack standing to contest a facially valid annexation enacted pursuant to statute. In *Town of Seven Devils v. Village of Sugar Mountain*, 125 N.C. App. 692, 482 S.E.2d 39, *disc. review denied*, 346 N.C. 185, 486 S.E.2d 219 (1997), Seven Devils sought a declaratory judgment voiding annexations by Sugar Mountain on the basis that a portion of the annexed area was closer to its corporate limits than to those of Sugar Mountain, and thus that it was an "interested" party in the meaning of the Declaratory Judgment Act. This Court ruled that Seven Devils lacked standing to bring the action. Citing *Taylor*, the Court held that "[b]ecause there is no statutory authority granting plaintiff standing to challenge the questioned annexations, the trial court correctly dismissed the complaint." *Id.* at 693, 482 S.E.2d at 40. Similarly, in *Joyner v. Town of Weaverville*, 94 N.C. App. 588, 380 S.E.2d 536 (1989), this Court held that only the owners of property in an annexed area have standing to challenge an annexation ordinance. In *McKenzie v. City of High Point*, 61 N.C. App. 393, 301 S.E.2d 129, *disc. review denied*, 308 N.C. 544, 302 S.E.2d 885 (1983), plaintiffs challenged an annexation of areas contiguous to High Point, alleging that the annexed area would not have been contiguous were it not for an earlier, allegedly defective, annexation of another area. This Court noted that "petitioners failed to show that they had standing (residency in the area) to attack the earlier annexation." *Id.* at 401, 301 S.E.2d at 131.

The annexation statute upon which Winterville based its annexation of South Ridge, G.S. § 160A-31, does not identify categories of plaintiffs other than owners of land in the subject area, who are authorized to challenge an annexation pursuant to the statute. The statute describes a *voluntary* annexation undertaken at the request of land owners; specifically, the statute does not authorize suit by neighboring municipalities. Nonetheless, plaintiffs have argued that irregularities in Winterville's annexation render its annexation of South Ridge "absolutely void," obviating the need for standing. We disagree.

Plaintiff asserts that (1) not all the property owners had signed the petition, as required under G.S. § 160A-31(a), and that (2) the land in question did not meet the requirement that it be contiguous with the previous corporate limits of Winterville. These questions are not properly before this Court. As stated by the court in *Burlington Industries, Inc. v. Edelman*, 666 F. Supp. 799 (M.D.N.C. 1987):

> "Standing" to sue means simply that the party has a sufficient stake in an otherwise justiciable controversy to obtain judicial resolution of that controversy. *Sierra Club v. Morton*, 405 U.S. 727, 31 L.Ed.2d 636 (1972). Standing is a jurisdictional issue[,] . . . [and] does not generally concern the ultimate merits of a lawsuit.

*Id.* at 804.

In *Davis v. City of Archdale*, 81 N.C. App. 505, 344 S.E.2d 369, (1986), the plaintiff asserted that an annexation was void for failure to follow statutory procedures. However, having determined that the plaintiff lacked standing, this Court did not address the merits of his claim, noting that standing is jurisdictional in nature. Thus, even if the alleged irregularities would, if proved, render the annexation voidable by an appropriate plaintiff, this does not eliminate the requirement that plaintiff have standing.

The lack of standing is a sufficient ground upon which to affirm the trial court's dismissal of plaintiff's suit. However, our decision rests equally on the lack of a justiciable controversy between the parties at the time that the action was commenced. A justiciable controversy is a prerequisite to a court's obtaining jurisdiction. "An actual controversy between the parties must exist at the time the complaint is filed in order for the court to have jurisdiction to render a declaratory judgment." *Town of Pine Knoll Shores v. Carolina Water Service*, 128 N.C. App. 321, 494 S.E.2d 618 (1998) (justiciable contro-

versy not shown by plaintiff's stated intention to violate restrictive covenant at some point in the future).

The existence of a "justiciable controversy" requires more than a simple disagreement between parties. "[T]o satisfy the jurisdictional requirement of an actual controversy, it is necessary that litigation appear unavoidable." *Sharpe v. Park Newspapers of Lumberton*, 317 N.C. 579, 589, 347 S.E.2d 25, 32 (1986) (quoting *Gaston Bd. of Realtors v. Harrison*, 311 N.C. 230, 234, 316 S.E.2d 59, 61 (1984)). The controversy must exist at the time the complaint is filed. This Court consistently has held that "future or anticipated action of a litigant does not give subject matter jurisdiction to our courts under the Declaratory Judgment Act." *Bueltel v. Lumber Mut. Ins. Co.*, 134 N.C. App. 626, 628, 518 S.E.2d 205, 207, *disc. review denied*, 351 N.C. 186, 541 S.E.2d 709 (1999). In *Richmond Co. v. N.C. Low-Level Radioactive Waste Mgmt. Auth.*, 335 N.C. 77, 436 S.E.2d 113 (1993), plaintiffs challenged the site selection process employed to determine the location for a waste treatment facility. The Court held that until the site selection was complete and a final siting decision had been made, there would be no actual justiciable controversy between the parties. *See also City of Raleigh v. R.R. Co.*, 275 N.C. 454, 168 S.E.2d 389 (1969) (no justiciable controversy where parties sought construction of proposed city ordinance that had not yet been passed at the time suit was filed). In contrast, where municipalities are actively competing to annex or zone a given area, a justiciable controversy may exist. *See, e.g., Town of Spencer v. Town of East Spencer*, 351 N.C. 124, 522 S.E.2d 297 (1999) (justiciable controversy created when adjoining towns both file competing resolutions of intent to annex an overlapping area).

In the present case, Ayden alleges that if Winterville's extraterritorial jurisdiction is extended, it "will encroach upon or come perilously close to the corporate limits of the Town of Ayden and will effectually prevent the Town of Ayden from extending its own extraterritorial jurisdiction one mile beyond its corporate limits." Ayden further claims that the planned extension of Winterville's extraterritorial jurisdiction will potentially adversely affect its ability to grow, regulate development to its north, and extend its extraterritorial jurisdiction. Ayden does not own any property in the subject area; nor had Ayden, at the time that it brought this action, sought to annex any of the property either in the annexed area or in the area over which Winterville could seek to exercise extraterritorial jurisdiction. Only if Ayden owned property in the annexed area, or if both

towns were simultaneously attempting to annex controverted property, could there be a justiciable controversy, giving Ayden standing to contest the annexation by Winterville. *See Town of Spencer*, 351 N.C. 124, 522 S.E.2d 297 (1999). Furthermore, we find no authority that would give Ayden the power to challenge the annexation ordinance if it were seeking, not to annex, but to exercise extraterritorial jurisdiction over any of the area in controversy.

Finally, N.C.G.S. § 160A-360(c) (1999) provides that, if the areas of extraterritorial jurisdiction of two municipalities overlap, a boundary shall be drawn midway through the overlapping area. Therefore, even if Ayden exercises its extraterritorial jurisdiction over the area of overlap with Winterville's extraterritorial jurisdiction, litigation still would not be "inevitable," in view of a statutory scheme for resolving such potential conflicts.

For the reasons stated above, we find that Ayden lacks standing to contest a voluntary annexation by its neighbor, Winterville, and further find that at the time the action was commenced there was no justiciable controversy between the parties. Accordingly, the trial court's dismissal of plaintiff's suit is affirmed.

Affirmed.

Judges WALKER and SMITH concur.